IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

THOMAS GOODNER and
LINDA GOODNER, individually and
on behalf of a class of all other
similarly situated individuals;                                           PLAINTIFFS

VS.                         CASE NO. 4:12-CV-04001

CLAYTON HOMES, INC.; CMH
HOMES, INC.; and VANDERBILT
MORTGAGE & FINANCE, INC.                                                  DEFENDANTS

## ORDER

Before the Court is Plaintiffs Thomas and Linda Goodner's Motion to Remand. (ECF No. 12). Defendants Clayton Homes, Inc., CMH Homes, Inc., and Vanderbilt Mortgage & Finance, Inc. have responded (ECF No. 32), and Plaintiffs have replied. (ECF No. 33).[1] The matter is ripe for the Court's consideration. For the following reasons, the motion will be granted.

## BACKGROUND

Plaintiffs filed this putative class-action suit in Lafayette County Circuit Court on November 10, 2011. The complaint seeks damages for violations of the Arkansas Deceptive Trade Practices Act and Arkansas Unfair Practices Act, unjust enrichment, and constructive fraud. Those claims arise from an alleged kickback scheme between CMH Homes, Inc. ("CMH") and Vanderbilt Mortgage & Finance, Inc. ("VMF"), both of which are owned by Clayton Homes, Inc. According to the Plaintiffs, the scheme consisted in CMH, a manufactured-home seller, receiving kickbacks from VMF, a finance company, for referring home buyers to VMF for

---

[1] The Court has also considered Defendants' notices of supplemental authority. (ECF Nos. 35 & 36).

financing. The Plaintiffs swore in separate affidavits not to seek more than $75,000 on behalf of any class member and not more than $5,000,000 for the whole class. Those amounts are the minimum amounts-in-controversy required for federal-court diversity jurisdiction. In other words, the stipulations were admittedly an attempt to keep the case in state court. Nevertheless, Defendants removed the case to this Court on January 6, 2012, relying on diversity jurisdiction under the Class Action Fairness Act ("CAFA") at 28 U.S.C. § 1332(d), and federal-question jurisdiction under 28 U.S.C. § 1331.

## DISCUSSION

Defendants argue that the Plaintiffs' stipulations are insufficient to defeat CAFA jurisdiction and keep the case out of federal court. They further argue that federal-question jurisdiction exists because the complaint contains substantial federal questions. Plaintiffs respond that the stipulations are binding and effective to defeat federal-court jurisdiction, and that the federal issues in this case are not substantial enough to warrant federal-question jurisdiction.

### I. CAFA Removal

A defendant invoking federal-court diversity jurisdiction through removal must prove the required statutory amount in controversy by a preponderance of the evidence. *Hargis v. Access Capital Funding,* LLC, 674 F.3d 783, 798 (8th Cir. 2012) (quoting *Bell v. Hershey Co.*, 557 F.3d 953, 956 (8th Cir. 2009)). The defendant does not have to prove by a preponderance that the amount in controversy *is* more than the statutory amount, but rather that a fact finder *might* legally conclude that it is. *Hartis v. Chicago Title Ins. Co.*, 656 F.3d 778, 781 (8th Cir. 2009) (quoting *Bell*, 557 F.3d at 958)). If a defendant meets its burden, then a plaintiff seeking remand must establish to a legal certainty that the amount in controversy is less than the statute requires. *Bell*, 557 F.3d at 956. The legal-certainty standard is not met if even a possibility exists of

recovering more than the statutory minimum. *Back Doctors Ltd. v. Metropolitan Property & Casualty Ins. Co.*, 637 F.3d 827, 831 (7th Cir. 2011).

Here, the Court need not consider whether the Defendants have shown by a preponderance that the amount in controversy might exceed the statutory minimum; the Plaintiff's stipulations, if they are binding, are enough to establish to a legal certainty that the statutory minimum is not met in this case. *Rolwing v. Nestle Holdings, Inc.*, 666 F.3d 1069, 1074 (8th Cir. 2012).

### a. Plaintiffs' stipulations

Removal is defeated by adding to the complaint a binding stipulation promising not to seek greater damages than the jurisdictional minimum required by CAFA: $75,000 per plaintiff and $5 million for all plaintiffs. *Bell*, 557 F.3d at 958. The parties here agree on that point. They disagree on whether Plaintiffs' stipulations are binding. Plaintiffs, as putative class representatives, each stipulated not to "seek damages or restitution" in excess of the jurisdictional minimums "inclusive of treble damages, costs, and attorneys' fees," or punitive damages. (ECF No. 1-1, at 21). Defendants make six challenges to Plaintiffs' stipulations.

### 1. Injunctive relief under the Arkansas Unfair Practices Act

Defendants first argue that Plaintiffs' stipulations fail because they do not preclude injunctive relief. Plaintiffs have sued under, among other statutes, the Arkansas Unfair Practices Act, ARK. CODE ANN. § 4-75-201 *et seq.* (West 2012). The statute allows any person to maintain an action to enjoin a violation of the act, "and, if injured thereby, for the recovery of damages." ARK. CODE ANN. § 4-75-211. According to Defendants' interpretation, damages are merely an accessory to injunctive relief under the act. Thus, Defendants argue, the statute requires Plaintiffs to seek injunctive relief even against their will.

3

The Court need not address the question whether Plaintiff may maintain an action under the Unfair Practices Act without seeking or getting injunctive relief. It is enough to note that there is, as a factual matter, no injunctive relief available in this case. Defendants stopped their alleged kickback scheme before the Plaintiffs brought this suit, so there is nothing to enjoin. *See Warren Wholesale Co., Inc. v. McLane Co., Inc.*, 374 Ark. 171, 175, 286 S.W.3d 709, 712 (Ark. 2008) ("Appellees initiated this case with a complaint seeking…an injunction restraining the Board's enforcement of section 15. The section 15 being challenged in this case is no longer in effect. There is therefore no longer a controversy between the parties…."); *Chochorowski v. Home Depot USA*, 585 F. Supp. 2d 1085, 1095 (E.D. Mo. 2008) ("Therefore, it is consistent that plaintiff has not included a prayer for injunctive relief in the petition, as the Damage Waiver that she challenges is no longer in use by the defendant and no injunctive relief would be appropriate.").

Defendants argue that even if the offending kickback scheme stopped before this suit was filed, Plaintiffs must seek to enjoin collection of future interest on the kickback. The statute suggests otherwise. The statute allows an action "to enjoin a continuance of any act or acts in violation of this subchapter." ARK. CODE ANN. § 4-75-211. Plaintiffs sued under ARK. CODE ANN. § 4-75-208, which forbids "[t]he secret payment or allowance of…commissions…." Defendants' "act or acts in violation" of the Unfair Practices Act, if there were any, were the secret payment of kickbacks. Continued receipt of future interest resulting from the kickback is not the underlying violation to be enjoined; it is rather an effect of the violation, and raises damages questions. Because collection of future interest is not the injunction-worthy violation of the act in this case, Plaintiffs are not compelled to seek injunctive relief against future-interest collection.

## 2. "Seeking" v. "accepting" damages

Defendants also argue that Plaintiffs' commitment not to "seek" certain damages does not preclude them from "accepting" certain damages. Arkansas Rule of Civil Procedure 54(c) is the crux of Defendants' argument. The rule states that "every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in his pleadings." Thus, Defendants argue, an Arkansas state court is required to award Plaintiffs more than they seek. The circumstances of this case, however, preclude such a windfall.

First, magic words are not needed to make a stipulation binding. *Smith v. American Bankers Ins. Co. of Florida*, No. 2:11-cv-02113, 2011 WL 6090275, at *5 (W.D. Ark. Dec. 7, 2011) ("Magic words are not required in order to make a sworn stipulation binding."). Second, cases interpreting Federal Rule of Civil Procedure 54(c), which is essentially identical to the Arkansas rule, show that Rule 54(c) may not be used as the Defendants fear it will be. Despite a "liberal policy in favor of Rule 54(c) amendments," Rule 54(c) is not without limits. *Baker v. John Morrell & Co.*, 382 F.3d 816, 831–32 (8th Cir. 2004). "A party will not be granted relief that is not pled when it would unduly prejudice the opposing party." *Trim Fit, LLC v. Dickey*, 607 F.3d 528, 531 (8th Cir. 2010); *Goff v. USA Truck, Inc.*, 929 F.2d 429, 430 (8th Cir. 1991). A court should hold the Plaintiff to his theory as pleaded "[i]f the complaint explicitly or implicitly disclaims certain legal characterizations of the claim." *Vidimos, Inc. v. Laser Lab Ltd.*, 99 F.3d 217, 222 (7th Cir. 1996). More germane to this case, "a verdict in excess of the demand could well be deemed prejudicial to the party that sought removal to federal court when the party seeking remand uses a damages-limitation provision to avoid federal court." *Morgan v. Gay*, 471 F.3d 469, 477 (3rd Cir. 2006).

Considering these principles, it is difficult to see how Plaintiffs could receive disclaimed relief. Defendants would clearly be prejudiced if Plaintiffs received relief beyond the scope of the stipulations and complaint. Moreover, Plaintiffs' remand pleadings openly disclaim unsought relief. None of Defendants' cited cases show that, in these circumstances, Plaintiffs could recover more than they seek.

### 3. Amending stipulations

Defendants next argue, citing ARK. CODE ANN. § 16-63-221, that Arkansas law explicitly allows Plaintiffs to amend their binding stipulations. This constant opportunity to amend, Defendants argue, undercuts the binding effect of Plaintiffs' stipulations. Plaintiffs respond that they are judicially estopped from amending their stipulations. The Court agrees.

In *Rowling v. Nestle Holdings, Inc.*, 666 F.3d 1069, 1072 (8th Cir. 2012), the Eighth Circuit recently recognized judicial estoppel as an independent basis for enforcing stipulations. The court there found that Missouri judicial estoppel, by which a party may not take a later contrary position to an earlier successful one, was enough to bind the plaintiff. *Id.* The court was "confident that Missouri courts will apply judicial estoppel to enforce the terms of the stipulations." *Id.* This Court finds reliance on Arkansas judicial estoppel similarly availing.

First, many Arkansas courts have found stipulations binding based on judicial estoppel. *Landown v. Runyon*, No. 3:12-cv-00015 JLH, 2012 WL 460286, at *1 (E.D. Ark. Feb. 13, 2012) ("nor has [plaintiff] entered into a binding stipulation that would preclude her under the doctrine of judicial estoppel from claiming more than $75,000 in damages, were this case remanded…."); *Smith v. American Bankers Ins. Co. of Florida*, No. 2:11-cv-02113, 2011 WL 6090275, at *7 (W.D. Ark. Dec. 7, 2011); *Knowles v. Standard Fire Ins. Co.*, No. 4:11-cv-04044, 2011 WL 6013024, at *4 (W.D. Ark. Dec. 2, 2011); *Murphy v. Reebok Int'l, Ltd.*, No. 4:11-cv-214-DPM,

6

2011 WL 1559234, at *2 (Apr. 22, 2011); *Harris v. Sagamore Ins. Co.*, No. 2:08-cv-00109 JLH, 2008 WL 4816471, at *3 (E.D. Ark. Nov. 3, 2008).

Indeed, any post-removal amendment by Plaintiffs would seem to fall squarely within Arkansas's judicial-estoppel doctrine. That doctrine applies where: 1) a party assumes a position clearly inconsistent with a position taken in an earlier case or the same case; 2) a party assumes the inconsistent position with the intent to manipulate the judicial process to gain an unfair advantage; 3) a party successfully maintains the earlier position such that the court relied on it; and 4) at least one court's judicial integrity is impaired or injured by the inconsistent positions. *McWhorter v. McWhorter*, 2009 Ark. 458, at 14, 344 S.W.3d 64, 72 (quoting *Beverly Enterprises-Arkansas, Inc. v. Thomas*, 370 Ark. 310, 316, 259 S.W.3d 445, 449 (Ark. 2007) (internal citations omitted)).

If Plaintiffs later seek damages exceeding the CAFA minimum, that position would be clearly inconsistent with their current position that they disclaim such relief. That later inconsistent position would be taken with the intent to game the judicial process to stay in state court but get federal-minimum damages. Plaintiffs current position is successful, in that this Court is relying on it in granting remand. And finally, this Court's judicial integrity would be impaired by the inconsistent positions. Thus, the four elements of Arkansas judicial estoppel squarely apply.

Taken together, existing case law and the Court's own application of Arkansas judicial-estoppel doctrine show that Plaintiffs would be precluded from amending their stipulations on remand.

### 4. Non-Arkansas class members

Defendants next argue that Plaintiffs' class of approximately 2,200 includes approximately 263 Arkansas residents who purchased homes from CMH outside of Arkansas. Applying choice-of-law analysis, Defendants contend that the claims of those roughly 263 class members would be governed by non-Arkansas law. Being governed by out-of-state law, Defendants argue, the claims might not be covered by the same procedural safeguards the Court has found to apply in Arkansas. Plaintiffs respond that they make only Arkansas-law claims, and that the class representatives are Arkansans whose stipulations bind the whole class; members dissatisfied with the stipulations may opt out and go it alone.

In *Hargis v. Access Captial Funding, LLC*, 674 F.3d 783, 790 (8th Cir. 2012), the plaintiff claimed a violation of a Missouri statute. She argued that because she alleged a violation of a Missouri statute, her putative class consisted only of Missouri plaintiffs. *Id.* at 789. She did not, however, expressly limit her class to Missouri plaintiffs.[2] *Id.* The Eighth Circuit found that omission sufficient to assume a nationwide class, and a nationwide class obviously put more than $5 million in controversy. *Id.* at 789–90.

The *Hargis* plaintiff had the same problem Plaintiffs here are alleged to have, in that the class might include out-of-staters (if not in actual citizenship, then at least in terms of applicable law). The Eighth Circuit offered two solutions to that problem: "She could have restricted her putative class in her original complaint or stipulated that the class would not seek damages above $5 million, but she did neither." *Id.* at 790. Thus, in this circuit, capping damages by stipulation is as effective to defeat removal as limiting the class is. The implication of the *Hargis* solutions is that a stipulated cap on damages keeps the case in state court no matter what the citizenship

---

[2] Plaintiffs here do claim to represent only Arkansas plaintiffs, but some of those plaintiffs' claims might be governed by out-of-state law.

makeup of the class. If the *Hargis* plaintiff had capped her damages, it would not have mattered that her class included non-Missourians.[3]

Indeed, on the whole, Eighth Circuit courts have not been squeamish about letting class representatives cap their constituents' recoveries. *Hargis* is merely the most recent expression of the trend. In *Rowling v. Nestle Holdings, Inc.*, 666 F.3d 1069, 1073 (8th Cir. 2012), the court followed the Seventh Circuit in approving caps by class representatives "in spite of its concerns about the potential conflict of interest inherent in damage disclaimers in pre-certification class actions." In *Bell v. Hershey Co.*, 557 F.3d 953, 958 (8th Cir. 2009), the lodestone of CAFA stipulations in this circuit, the court was prepared to accept the plaintiff's stipulation, presumably on behalf of his class. Finally, in *Murphy v. Reebok Int'l, Ltd.*, No. 4:11-cv-214-DPM, 2011 WL 1559234 (Apr. 22, 2011), the court rejected numerous arguments against a class representative's ability to stipulate for the class. The *Murphy* class was defined, in its entirety, as "[A]ll Arkansas residents that purchased REEBOK's Toning Shoe Products." First Amended Class Action Complaint, *Murphy*, No. 4:11-cv-00214-DPM, ECF No. 3, at 12. That class likely included Arkansans who purchased shoes out-of-state, just as the class here includes out-of-state home purchases, but the *Murphy* Court did not even discuss that factor in finding satisfaction with the class representative's stipulation.

*Hargis*, *Rowling*, *Bell*, and *Murphy* together show that a class representative may bind her constituents by stipulating to a damages cap, whether the constituents' claims are governed by the forum's law or out-of-state law. If a forum-state class member doesn't like the stipulation, he must either opt-out or live with the stipulation. *Morgan v. Gay*, 471 F.3d 469, 478–79 (3rd Cir. 2006). Members whose claims arise out of state presumably have the same two choices.

---

[3] Capping a nationwide class at $5 million might raise certification concerns, but the remand stage is not the place to address certification issues.

Assuming, in spite of applicable case law, that the chips fall as Defendants predict they will, Arkansas residents with non-Arkansas claims would likely be excluded from the class. Plaintiffs make only Arkansas-law claims. Three of the seven questions common to the class listed in Plaintiffs' complaint explicitly mention Arkansas statutes. (ECF No. 7, at 8-9). The Unfair Practices Act is one of those statutes. *Id.* The Arkansas Supreme Court has "not heretofore held that the Unfair Practices Act is to be given application beyond the borders of Arkansas." *Chalmers v. Toyota Motor Sales, USA, Inc.*, 326 Ark. 895, 907, 935 S.W.2d 258, 264 (Ark. 1996). Moreover, "as a general rule, statutes have no effect except within the state's own territorial limits." *Id.* Given that law, it is unlikely that out-of-state purchasers could even be included in Plaintiffs' class at all.

5. **Constitutionality of ARK. CODE ANN. § 16-63-221**

Defendants next argue that ARK. CODE ANN. § 16-63-221 may not be used to cap Plaintiffs' amount in controversy, because the statute is unconstitutional. The statute, according to Defendants, violates the Supremacy Clause of the U.S. Constitution—in other words, the statute is preempted. This Court, however, may not hear the Defendants' constitutional challenge.

For 70 years it's been the law that "no matter how seasoned the judgment of the district court may be, it cannot escape being a forecast rather than a determination" of what a state's law might be. *R.R. Comm'n of Tex. v. Pullman Co.*, 312 U.S. 496, 499, 61 S. Ct. 643, 645 (1941). Where "a federal court of equity is asked to decide an issue by making a tentative answer which may be displaced tomorrow by a state adjudication," the federal court should abstain. *Id.* at 500. Defendants admit that "Arkansas appellate courts have not yet determined whether a plaintiff may limit damages under section 221…." (ECF No. 32, at 49). "[T]he enforceability of section

221," according to Defendants, "is far from certain." (ECF No. 32, at 49). This Court may not decide unsettled questions of state law. *Hawaii Housing Auth. v. Midkiff*, 467 U.S. 229, 236, 104 S. Ct. 2321, 2327 (1984). The Court will thus not consider the constitutionality of ARK. CODE ANN. § 16-63-221.[4]

### 6. Bad faith

Defendants finally argue that Plaintiffs have capped their damages in bad faith. As evidence, Defendants allege a string of past cases brought by Plaintiffs' counsel in which large recoveries or settlements were had. Defendants also argue that damage stipulations intended to defeat removal violate CAFA and general federal-court-jurisdiction policy.

The Court disagrees. Plaintiffs appear to have done no more than the law of this circuit allows them to do. *Bell* invited stipulations, and Plaintiffs accepted. A "law-driven forum preference" may or may not be a wise tactic, but "[i]t is, in any event, not bad faith." *Murphy v. Reebok Int'l, Ltd.*, No. 4:11-cv-000214 DPM, 2011 WL 1559234, at *2 (E.D. Ark. Apr. 22, 2011).

For the above reasons, the Court finds Plaintiffs' stipulations sufficiently binding to keep this case out of federal court.

### II.   Federal-question jurisdiction

In addition to arguing diversity jurisdiction through CAFA, Defendants also argue that this Court has federal-question jurisdiction over this case under 28 U.S.C. § 1331 for two reasons. First, the allegedly deceptive form that Defendants used in their purchasing and financing transactions was prepared by the Department of Housing and Urban Development, a federal agency. Defendants argue that Plaintiffs are not allowed to challenge that federal-agency form under state law in state court, because the question is federal. Second, Arkansas's

---

[4] Regardless of ARK. CODE ANN. § 16-63-221, judicial estoppel would independently bind the Plaintiffs.

jurisdiction-cap statute, ARK. CODE ANN. § 16-63-221, is unconstitutional, and its constitutionality is a federal question. Neither of these arguments is persuasive.

### a. HUD form

Defendants contend that their use of a model HUD form means that any challenges to that form under Arkansas law raise a federal question. Federal-question jurisdiction exists "if adjudication of a state claim would turn on a federal constitutional or other important federal question, even where only state issues have been pled." *Pet Quarters, Inc. v. Depository Trust & Clearing Corp.*, 559 F.3d 772, 779 (8th Cir. 2009). For state-law causes of action, "'original federal jurisdiction is unavailable unless it appears that some substantial, disputed question of federal law is a necessary element of one of the…state claims….'" *McNiell v. Franke*, 171 F.3d 561, 564 (8th Cir. 1999) (quoting *Franchise Tax Bd. v. Construction Laborers Vacation Trust*, 463 U.S. 1, 13, 103 S. Ct. 2481 (1983)). "Nevertheless, 'the mere presence of a federal issue in a state cause of action does not automatically confer federal-question jurisdiction.'" *Id.* (quoting *Merrell Dow Pharmaceuticals Inc. v. Thompson*, 478 U.S. 804, 813, 106 S. Ct. 3229 (1986)).

In *Pet Quarters*, the Eighth Circuit found federal-question jurisdiction where the plaintiff's complaint challenged the very existence of an entire SEC program. *Pet Quarters*, 559 F.3d at 779. The court said that such a claim "directly implicates action taken by the Commission in approving the creation of the [program] and the rules governing it." *Id.* Plaintiffs' case here raises no such direct implication, and falls vastly short of challenging the existence of an entire federal program. That Defendants happened to use a HUD model form raises an incidental federal issue, not one that involves a substantial, disputed question of federal law. Plaintiffs are not challenging the HUD form on its face. They are challenging its disclosures in relation to Defendants' actual conduct.

Courts have held that "the mere fact that...provisions were included in the contract per federal requirements does not turn [a state-court contract] action into a federal question case." *Giannetti Bros. Const. Corp. v. Lee Cnty, Fla.*, 585 F. Supp. 1214, 1219 (M.D. Fla. 1984) (citing many other cases for the proposition). This is not a contract action, but the contract rule is a helpful analogue; in both situations the parties are arguing about a document and its intent and effect. That the document is a federal form is merely incidental to the case. As the Fourth Circuit said nearly 40 years ago:

> The real basis on which plaintiff plants her cause of action is an alleged contract or agreement to procure insurance, the breach of which, under her theory, gave rise to an action both in contract and in tort under the law of Virginia. It is true the alleged agreement had its "origin" in a notice form intended by the defendant as compliance with the Act and the Regulations issued by the Federal Reserve System. That, however, was purely coincidental. Whether the form was one designed to comply with the Truth in Lending Act or not was unimportant; the basic issue in the case was whether the language used by the defendant in its form of loan application was sufficient to be the basis for the creation of a contractual right and that issue, all parties agree, is determinable solely by Virginia law, not federal law. In no sense can it be said that the plaintiff's cause of action is grounded on the Truth in Lending Act or will be dependent on a construction of that Act.

*Burgess v. Charlottesville Savings & Loan Ass'n*, 477 F.2d 40, 44 (4th Cir. 1973).

So it is here. Plaintiffs base their action on Defendants' disclosure form. The allegedly misleading nature of that form gives rise to an Arkansas action. The basic issue in the case is whether Defendants' conduct belied the form's disclosures. The form's federal origin is coincidental, and cannot convert this basically state action into a federal one.

### b.  Constitutionality of ARK. CODE ANN. § 16-63-221

Defendants last argue that ARK. CODE ANN. § 16-63-221 raises constitutional issues that make the case federal, and that complete preemption applies. The Court has already discussed its unwillingness to entertain ARK. CODE ANN. § 16-63-221's constitutionality. *See supra*, Part

1(a)(5). Moreover, ordinary preemption such as that raised in Defendants' supplemental authority, *Arizona v. United States*, ___U.S.___, 132 S. Ct. 2492 (2012), cannot alone establish federal-question jurisdiction. *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 63 (1987) (preemption is ordinarily a federal defense that "does not authorize removal to federal court"). Finally, Defendants' complete-preemption argument—which is distinct from their ordinary-preemption argument—is too thinly developed even to encroach upon the "demanding test for complete preemption." *Kuntz v. Ill. Cen. R.R. Co.*, 469 F. Supp.2d 586, 592 (S.D. Ill. 2007).

## CONCLUSION

Plaintiffs seem to have done what the law allows them to do. The parties ask the Court to speculate about what the effects of that might be. "Speculation as to a state court's future acts or [p]laintiff's future acts," however, "cannot vest this Court with jurisdiction where it otherwise has none at the time of removal." *Smith v. American Bankers Ins. Co. of Fla.*, No. 2:11-cv-02113, 2011 WL 6090275, at *6 (W.D. Ark. Dec. 7, 2011). Plaintiffs' stipulations are binding. If they suffer a technical flaw, then judicial estoppel makes them binding still. The stipulations are thus sufficient to meet Plaintiffs' legal-certainty burden. Nor do Plaintiffs' claims raise jurisdiction-giving federal questions. For the above reasons, Plaintiffs' motion to remand should be and hereby is **GRANTED**. This case is hereby **REMANDED** to the Circuit Court of Lafayette County, Arkansas, for further proceedings.

IT IS SO ORDERED, this 10th day of September, 2012.

/s/ Susan O. Hickey
Hon. Susan O. Hickey
United States District Judge