IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

THOMAS GOODNER and
LINDA GOODNER, individually and
on behalf of a class of all other
similarly situated individuals                                                                                      PLAINTIFFS

V.                                            CASE NO. 4:12-CV-4001

CLAYTON HOMES, INC.; CMH
HOMES, INC.; and VANDERBILT
MORTGAGE & FINANCE, INC.                                                                                          DEFENDANTS

**ORDER**

On September 10, 2012, this Court granted Plaintiffs' Motion to Remand and remanded this case to the Circuit Court for Lafayette County for further proceedings. ECF No. 37. The Court's remand decision was based upon Plaintiffs' stipulation which limited the class recovery to a sum less than the amount-in-controversy required by the Class Action Fairness Act. Defendants appealed the decision. On September 16, 2013, the Eighth Circuit Court of Appeals summarily remanded the case to this Court for reconsideration in light of the Supreme Court's recent decision regarding stipulations made on behalf of absent class members. *Standard Fire Ins. Co. v. Knowles*, 133 S. Ct. 1345, 185 L. Ed. 2d 439 (2013).

Plaintiffs' Motion to Remand (ECF No. 12) is now before the Court for reconsideration. Defendants have responded. ECF No. 32. Plaintiffs have filed a reply. ECF No. 33. The parties have filed a large number of supplemental briefs. ECF Nos. 36, 44, 45, and 48. Also before the Court is Plaintiffs' Motion for Jurisdictional Discovery. ECF No. 46. Defendants

have filed a response to the discovery motion. ECF No. 47. These issues are ripe for the Court's consideration.

## BACKGROUND

Plaintiffs filed this putative class action suit in Lafayette County Circuit Court on November 10, 2011. The complaint seeks damages for violations of the Arkansas Deceptive Trade Practices Act and the Arkansas Unfair Practices Act as well as unjust enrichment and constructive fraud. The claims arise from an alleged kickback scheme between CMH Homes, Inc. ("CMH") and Vanderbilt Mortgage & Finance, Inc. ("VMF"), both of which are owned by Clayton Homes, Inc. According to Plaintiffs, the scheme consisted of CMH, a manufactured home seller, receiving kickbacks[1] from VMF, a finance company, for referring home buyers to VMF for financing. Plaintiffs allege that neither CMH nor VMH disclosed to Plaintiffs that they were using money charged to and provided by Plaintiffs to make the 4% kickback payment to CMH in return for getting Plaintiffs to agree to finance the purchase of the manufactured home with VMH.

## DISCUSSION

Defendants wish to remain in federal court pursuant to the Class Action Fairness Act ("CAFA"). Plaintiffs, however, move the Court to remand this case back to state court. They argue that the amount in controversy is less than $5 million, and therefore this Court lacks federal jurisdiction over the subject matter of this lawsuit.

For a case to be heard in federal court, CAFA requires, among other things, that the case's amount in controversy be greater than $5 million. 28 U.S.C. § 1332(d)(2) (2006). Plaintiffs previously argued that they put less than $5 million in controversy by stipulating not to accept more, but the Supreme Court's recent decision in *Standard Fire Ins. Co. v. Knowles*

---

[1] This kickback or "commission" was equal to 4% of the gross profit of the sale of the home.

2

definitively states that such stipulations may not prevent removal under CAFA. 133 S. Ct. at 1348 (holding that, in order to defeat CAFA jurisdiction, a stipulation must be binding, and a plaintiff bringing a proposed class action cannot bind members of the proposed class before it is certified). Plaintiffs now assert that Defendants have not submitted sufficient evidence showing that the amount in controversy exceeds $5 million. This is the only issue that is presently before the Court.

A defendant invoking federal-court diversity jurisdiction through removal must prove the required statutory amount in controversy by a preponderance of the evidence. *Hargis v. Access Capital Funding, LLC*, 674 F.3d 783, 798 (8th Cir. 2012) (quoting *Bell v. Hershey Co.*, 557 F.3d 953, 956 (8th Cir. 2009)); *see also* 28 U.S.C. § 1446(c)(2)(B). The defendant does not have to prove by a preponderance that the amount in controversy *is* more than $5 million, but rather that a fact finder *might* legally conclude that it is. *Hartis v. Chicago Title Ins. Co.*, 656 F.3d 778, 781 (8th Cir. 2009) (quoting *Bell*, 557 F.3d at 958)). If a defendant meets its burden, then a plaintiff seeking remand must establish to a legal certainty that the amount in controversy is less than the required statutory amount. *Bell*, 557 F.3d at 956. The legal-certainty standard is not met if even a possibility exists of recovering more than the statutory minimum. *Back Doctors Ltd. v. Metropolitan Property & Casualty Ins. Co.*, 637 F.3d 827, 831 (7th Cir. 2011).

Defendants maintain that CAFA's amount-in-controversy requirement is easily met by calculating the potential compensatory damages stemming from the alleged kickback scheme, trebling the compensatory damages pursuant to Arkansas law, and adding attorney fees and punitive damages. In response, Plaintiffs claim that: (1) there is no competent proof of Defendants' calculation of the amount of potential compensatory damages; (2) speculative future attorney fees are not in controversy and, if they were, Defendant's estimated attorney fee of 30-

3

40% of the total possible class recovery is not supported by competent proof; (3) a stipulation by Plaintiffs' attorney, Matt Keil, limits the amount of attorney fees in controversy; and (4) Defendants' estimated amount of punitive damages in controversy is not supported by competent proof.

### A. Compensatory Damages

Plaintiffs' Complaint alleges that VMF used money charged to and paid by Plaintiffs and by members of the putative class to make a payment of 4% of the gross profit on the sale of a home to CMH ("4% Commission"). They further allege that this scheme by CMF and VMF violates the Arkansas Deceptive Trade Practices Act and the Arkansas Unfair Practices Act. Plaintiffs seek recovery of "the amount of the secret kickback," or 4% Commission, that was purportedly added to each manufactured home's sales price when they financed their home purchases through VMF. ECF No. 7, at ¶¶ 37, 41, 44, and 47. By Defendants' calculation, the 4% Commission for home sales to Arkansas residents in the putative class period alleged in the Complaint totals $983,408.86. ECF Nos. 32-1, 44-1, and 48-1.

Defendants used a gross profit figure to calculate the total amount of the 4% Commission charged to Plaintiffs for home sales in the putative class period. Plaintiffs' primary objection to Defendants' calculation is rooted in Defendants' use of the phrase "gross profit located on CMH's computer" in an affidavit explaining this calculation. *See* ECF No. 32-3, at ¶ 3. Plaintiffs state that this phrase is ambiguous and that the "actual" gross profit used by Defendants to pay the 4% Commission to VMF may be a different number than the "gross profit located on CMH's computer." Defendants, however, clarify that the amount represented by the phrase "gross profit located on CMH's computer" is the same amount as the gross profit amount that they used to calculate the 4% Commission. ECF No. 48, at 11.

4

Defendants' calculation of the 4% Commission for home sales in the putative class period alleged in the Complaint is supported by sworn affidavits explaining in adequate detail how they arrived at this calculation. Accordingly, a fact-finder might legally conclude that the putative class members' are entitled to at least $983,408.86 in compensatory damages.[2]

A fact-finder might also legally conclude that the putative class members' are entitled to treble damages. The Complaint (ECF No. 7) states that Plaintiffs and putative class members are entitled to three times the amount of actual damages they sustained pursuant to the Arkansas Unfair Practices Act. *See* Ark. Code Ann. § 4-75-211(b)(3). Plaintiffs do not dispute this. Multiplying $983,408.86 (4% Commission) by three gives a total of $2,950,226.58 in compensatory damages.

### B. Prejudgment Interest

Plaintiffs expressly request the recovery of statutory prejudgment interest on the 4% Commission. ECF No. 7, at 14. Defendants calculated the prejudgment interest on the 4% Commission through December 31, 2011, and came up with a total of $293,617.26. ECF No. 32-1, at ¶ 5. Plaintiffs neither dispute this calculation nor argue that prejudgment interest should be excluded from calculating the amount in controversy. However, according to the CAFA statute, the amount in controversy must be determined "exclusive of interest and costs." 28 U.S.C. § 1332(d)(2). The Court, therefore, will exclude prejudgment interest from the amount-in controversy calculation.

---

[2] Defendants argue that Plaintiffs are also seeking return of the previously paid interest on the 4% Commission and asking the Court to enjoin the collection of future interest on the 4% Commission. The Court will not decide whether these amounts are in controversy because the total amount in controversy easily exceeds $5 million without considering these amounts.

### C. Punitive Damages

Plaintiffs' allege common law claims of constructive fraud and unjust enrichment, which would permit Plaintiffs to recover punitive damages. *Curtis Lumber Co., Inc. v. La Pac. Corp.*, 618 F.3d 762, 785 (8th Cir. 2010) (holding that punitive damages are possible in cases involving fraud if defendant knew or ought to have known that his conduct would result in injury or damage). Plaintiffs do not dispute that punitive damages may be awarded under Arkansas law if they prove the allegations in their Complaint. Plaintiffs also do not dispute that punitive damages are included in the amount in controversy.[3] Instead, Plaintiffs argue that Defendants' calculation of possible punitive damages of six times the compensatory damages is not supported by competent proof.

Since there is no dispute that a punitive damages award is legally possible based on Plaintiffs' common law allegations, the only issue remaining is how much the punitive damages might amount to in this case. Courts considering the availability of punitive damages in the CAFA amount-in-controversy context have held that utilizing multipliers of four to six times the total amount of compensatory damages is acceptable in determining what punitive damages award might be legally permissible. *Bass v. Carmax Auto Superstores, Inc.*, 07-0883-CV-W-ODS, 2008 WL 441962, at *2 (W.D. Mo. Feb. 14, 2008) (holding that a punitive damages award of 6.7 times the amount of compensatory damages "would likely be constitutionally acceptable."); *Brown v. City Chevrolet, LLC*, No. 09–0642–CV–W–GAF, 2009 WL 3485833, at *1 (W.D. Mo. Oct. 28, 2009) (holding that a multiplier of more than 3.98 was permissible); *Thatcher v. Hanover Ins. Grp., Inc.*, CIV. 10-4172, 2012 WL 1933079, at *6 (W.D. Ark. May

---

[3] Originally, Plaintiffs purported to disclaim punitive damages through a stipulation in their Complaint. The Supreme Court's decision in *Standard Fire*, however, forecloses Plaintiffs from relying on the stipulation disclaiming punitive damages. *See Standard Fire Ins. Co. v. Knowles,* 133 S. Ct. 1345, 1348-49,185 L. Ed. 2d 439 (2013).

6

29, 2012) (holding that punitive damages of over $11 million were potentially available in a case where the breach of contract damages amounted to only a little over $2.4 million); *Kerr v. Ace Cash Experts, Inc.*, 4:10 CV 1645 DDN, 2010 WL 5177977, at *2 (E.D. Mo. Dec. 14, 2010) (holding that a compensatory damages award of only $594,000 could "satisfy the amount in controversy requirement because of the potential for punitive damages and attorneys fees.").

Here, Defendants argue that a fact-finder might legally conclude that Plaintiffs and putative class members are entitled to punitive damages in the amount of six times the actual damages. Plaintiffs assert that Defendants must show that a multiplier of six was used in cases similar to the present case when awarding punitive damages. The Court disagrees with Plaintiffs' attempt to hold Defendants to some elevated standard of proof for punitive damages to be included in the amount in controversy. Again, the Court notes that a defendant does not have to prove by a preponderance that the amount in controversy *is* more than $5 million, but rather that a fact finder *might* legally conclude that it is. *Hartis v. Chicago Title Ins. Co.*, 656 F.3d 778, 781 (8th Cir. 2009) (quoting *Bell*, 557 F.3d at 958)); *see also Raskas v. Johnson & Johnson* 719 F.3d 884, 887 (8th Cir. 2013).

Here, Defendants have adequately proven that a fact-finder might legally conclude that the compensatory damage award would be $983,408.86. Based on the weight of authority above, the Court finds that an award of punitive damages in the amount of six times the actual damages would be legally possible. In this case, however, using a more conservative multiplier of three would cause the amount in controversy to easily exceed $5 million when combined with compensatory damages (trebled) and attorney fees. Accordingly, the Court will assume a punitive damages award equal to three times the actual damages. Multiplying $983,408.86 (actual damages) by three gives a total of $2,950,226.58 in punitive damages.

### D. Attorney Fees

Attorney fees are available to Plaintiff pursuant to the Arkansas Deceptive Trade Practices Act. Ark. Code Ann. §§ 4-88-113(f) and 4-88-204. Plaintiffs do not dispute this. Instead, Plaintiffs argue that attorney fees cannot count toward the amount in controversy, that attorney fees of 40 percent are unlikely, and that the pre-certification stipulation by one of Plaintiffs' attorneys limits the attorney fees that may be awarded.

Because statutory attorney fees are available to Plaintiffs, the fees may be included in calculating the amount in controversy. *Knowles v. Standard Fire Ins. Co.*, 4:11-CV-04044, 2013 WL 3968490, at *10 (W.D. Ark. Aug. 2, 2013) (holding that attorney's fees not yet incurred at the time of removal may still be included in calculating the amount in controversy); *Thatcher v. Hanover Ins. Group Inc.*, 2012 WL 1933079, at *5 (W.D. Ark. May 29, 2012); *Rasmussen v. State Farm Mut. Auto Ins. Co.*, 410 F.3d 1029, 1031 (8th Cir. 2005) ("[S]tautory attorney fees count toward the jurisdictional minimum calculation."); *Crawford v. F. Hoffman-La Roche Ltd.*, 267 F.3d 760, 766 (8th Cir. 2001) ("Statutory attorney fees do count toward the jurisdictional minimum for diversity jurisdiction."). Defendants have submitted declarations stating that attorney fees of 30-40% could be awarded in this class action. ECF Nos. 1-4 and 32-2. Plaintiffs, however, contend that a 30-40% fee is speculative and argue that Defendants have not submitted competent proof for this figure.

Arkansas law dictates a number of factors that may be considered when awarding "reasonable" attorney's fees, including the experience of the attorney, the time and labor required, the amount in controversy, the difficulty of issues involved, and the customary fee for similar services. *See Phelps v. U.S. Credit Life Ins. Co.*, 10 S.W.3d 854, 856 (Ark. 2000). However, at this stage in the proceedings, "a fact-intensive, prospective" analysis of these factors

is not appropriate. *Standard Fire Ins. Co.*, 2013 WL 3968490, at *6. Defendants must only show what attorney's fees *might* legally be possible under these circumstances.

Other courts considering attorney fees in the amount-in-controversy context have held that a fee of 40% is a reasonable estimate at this stage in the pleadings. *Thatcher v. Hanover Ins. Grp., Inc.*, CIV. 10-4172, 2012 WL 1933079, at *5 (W.D. Ark. May 29, 2012) ("The Court strongly doubts that any plaintiff's attorney would argue that attorneys' fees permissible under an applicable statute *could not be awarded* by a court with jurisdiction over the matter."); *Standard Fire Ins. Co.*, 2013 WL 3968490, at *6 ("[E]ven though other courts have found it reasonable to award attorney's fees at a rate of 20–25% of the total recovery, this does not mean that a 40% rate would be legally impossible."). The Court finds that a 30-40% attorney fee could be awarded in this particular case, and Plaintiffs have not shown that this type of award would be legally impossible. Conservatively applying a 30% recovery rate to only the trebeled amount of compensatory damages, Plaintiffs could potentially be awarded $885,067.98 in attorney fees.

Plaintiffs argue that the stipulation by one of their attorneys, Matt Keil, that he would not seek damages for the class in excess of $4,999,999, inclusive of attorney's fees, limits the amount of fees in controversy. The Court disagrees. First, Keil's stipulation does not apply to the other attorneys and law firms that presently represent Plaintiffs in this action. Further, if Plaintiffs decide to replace their attorneys or different attorneys are appointed as class counsel, then it's possible that the new attorneys would not be bound by Keil's stipulation. Second, the statutory attorney fees are a benefit belonging to the putative class. Under *Knowles*, a representative plaintiff cannot limit the recovery available to a class prior to class certification. *Standard Fire Ins. Co. v. Knowles*, 133 S. Ct. 1345, 185 L. Ed. 2d 439 (2013). So it follows that a representative plaintiff's attorney would also be prohibited from limiting the recovery available

9

to a class prior to class certification. Moreover, even without including attorney fees in the calculation, the amount in controversy here could possibly exceed $5 million when considering punitive damages.

## CONCLUSION

Aggregating Defendants' estimates for potential trebeled compensatory damages ($2,950,226.58), punitive damages ($2,950,226.58), and attorneys' fees ($885,067.98) results in total potential damages of $6,785,521.14. Plaintiffs have not countered with evidence showing to a legal certainty that the amount-in-controversy is $5 million or less. Accordingly, Defendants have met CAFA's jurisdictional requirements. For the reasons stated above, Plaintiffs' Motion to Remand (ECF No. 12) is **DENIED**. In the light of the Court's findings above, further jurisdictional discovery as to the amount in controversy is unnecessary. Thus, Plaintiffs' Motion for Jurisdictional Discovery (ECF No. 46) is **DENIED**.

IT IS SO ORDERED, this 23rd day of September, 2014.

/s/ Susan O. Hickey
Susan O. Hickey
United States District Judge